UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
DAVID OWENS,

                    Plaintiff,

        -against-

THE CITY OF NEW YORK, ANTHONY FRANCAVILLA (N.Y.P.D.) SHIELD #26944, CLARICE LUCES (N.Y.P.D.) SHIELD #7205, SERGEANT LEE JONES (N.Y.P.D.) SHIELD #2998, DETECTIVE BERNABE VARGAS (N.Y.P.D.) SHIELD #4295, LIEUTENANT PATRICK HAMILITON (N.Y.P.D.), LIEUTENANT VALENZANO (N.Y.P.D.), OFFICERS JOHN DOE #1-10 (THE NAME JOHN DOE BEING FICTICIOUS, AS THE TRUE NAME(S) IS/ARE PRESENTLY UNKNOWN),

                    Defendants.
------------------------------------------------------------------X

Index No.: 15-CV-8214 (WHP)

**FIRST AMENDED COMPLAINT**

**JURY TRIAL DEMANDED**

The Plaintiff, complaining by his attorney(s), THE LAW OFFICE OF ANDREW L. HOFFMAN, P.C., respectfully shows to this Court and alleges:

## INTRODUCTION

1. This is an action to vindicate the rights of David Owens, who was wrongfully arrested on October 23, 2012, at approximately 2:38 AM, as he rode the subway home from his job as a stock clerk at the Herald Square Macy's.

2. Prior to the Plaintiff's arrest, the Defendant officers had allegedly received a report that at 2:28AM, an African American male in a hoodie had stolen a backpack from a woman riding either an Uptown "A" train, or an uptown "B," "C," or "E" train—police accounts are conflicting.

1

3. The crime was alleged to have occurred at 2:28 AM, just 12 minutes after Owens clocked out from Macy's, and just 10 minutes before Owens was arrested on an uptown "1" train, with no stolen property anywhere on or near him.

4. Shortly after Owens was arrested from the "1" train, an erratic, possibly intoxicated, and definitely hysterical woman who officers had to hold up as she spoke, was brought forth and claimed that David Owens was the person who "did it" (i.e., stole her backpack).

5. Notably, the Complainant was anything but coherent regarding her memory of her backpack being stolen. According to police documents, at about 2:28 AM, either on the Uptown "A" train at 50th Street and 8th Avenue, or an uptown "B," "C," or "E," train at 53rd Street and 7th Avenue, she was resting with her feet on the backpack when she "felt someone" take it. She then "later" allegedly saw Mr. Owens "get off the train and run up a flight of stairs" with it.

6. When Mr. Owens tried to explain that he had just clocked out from his job as a stock clerk at Macy's, showed officers his time card receipt and gave officers the name and phone number of his supervisor, Defendants Francavilla, Luces, Jones, Vargas (and other as yet unknown officers) ignored him.

7. At all times relevant, Defendants Hamilton and Valenzano supervised the Defendant officers, and signed their approval of the Defendant officers' misconduct on related police documents.

8. It is against this troubling backdrop that Mr. Owens was arrested and charged with Grand Larceny in the Fourth Degree, and $3500 bail was set.

9. Mr. Owens remained incarcerated at Riker's Island for approximately 6 weeks (costing him his job at Macy's) until his case was dismissed at the request of the District Attorney's office.

10. The Complainant was never put in front of a grand jury, no grand jury was ever assembled, and no indictment was ever secured, giving rise to an inference that prosecutors knew their case could not be sustained on the word of such a totally unreliable witness, and no reasonable officer would have made an arrest under the circumstances.

11. The individual Defendants in this matter are now being sued for their respective roles in the violation of the Plaintiff's rights.

12. The City of New York is being sued for failing to properly train, supervise, and/or discipline New York City police officers, and for continuing to tolerate and defend a widely publicized departmental culture of willful indifference toward the rights of citizens.

## VENUE

13. Venue lies in this District pursuant to 28 U.S.C.A. Section 1391(b) (2) since the events giving rise to the claim occurred in the Southern District.

## THE PARTIES

14. At all times relevant to this litigation, Plaintiff DAVID OWENS, who is African American, worked and resided in Manhattan, New York.

15. Upon information and belief, at all times hereinafter mentioned, the Defendant, CITY OF NEW YORK was and still is a municipal corporation duly organized and existing under and by virtue of the laws of the State of New York, and that at all times relevant all Defendant officers were acting for, upon, and in furtherance of the business of their employer and within the scope of their employment.

16. Upon information and belief, at all times hereinafter mentioned, the Defendant, CITY OF NEW YORK, its agents, servants, and employees, operated, maintained and controlled the New York City Police Department, including all the police officers thereof.

17. Upon information and belief, at all times hereinafter mentioned, Defendants FRANCAVILLA, LUCES, JONES, VARGAS, HAMILITON, VALENZANO and POLICE OFFICER(S) DOE #1-10 were employed by the Defendant CITY OF NEW YORK, as members of its police department.

18. Upon information and belief, at all times hereinafter mentioned, all Defendant Police Officers, be they known or unknown, were assigned to either TRANSIT DIVISION, DISTRICT 1, the MANHATTAN ROBBERY SQUAD, or related N.Y.P.D. entities, in Manhattan, New York.

19. The New York City Police Department is a local governmental agency, duly formed and operating under and by virtue of the Laws and Constitution of the State of New York and the police chief of the New York City Police Department is responsible for the policies, practices, and customs of the New York City Police Department as well as the hiring, screening, training, supervising, controlling and disciplining of its police officers and civilian employees, and is the final decision maker for that agency.

20. This action arises under the United States Constitution, particularly under provisions of the Fourth and Fourteenth Amendments of the Constitution of the United States, and under federal law, particularly the Civil Rights Act, Title 42 of the United States Code, Section 1983, the rights guaranteed by the Constitution, and the laws of the State of New York.

21. Individual Defendants in this action are being sued in both their individual and official capacities.

4

## STATEMENT OF FACTS

22. On October 23, 2012, at approximately 2:16 AM, Plaintiff David Owens clocked out from his job at Macy's Department Store in Herald Square, where he was employed as a stock clerk.

23. Shortly thereafter, Mr. Owens boarded the "1" train at 34th Street, and headed uptown toward his home.

24. When Mr. Owens's train pulled into the 59th Street station, Defendants Francavilla, Luces, Jones, Vargas, and other, as yet unknown officers, stepped inside the train and demanded that Mr. Owens present his identification.

25. Mr. Owens complied, and Defendant Francavilla and the other officers proceeded to take Mr. Owens off the train, place him against a wall, pat him down and empty his pockets.

26. Mr. Owens was only in possession of his I.D., his Macy's time clock receipt, apartment keys, a cell phone, and some loose change.

27. Mr. Owens asked Francavilla and his colleagues why they were arresting him, but they refused to answer. All he could decipher, based on snippets of radio communications that he heard, was that a young black male in a hoodie had recently committed a crime.

28. Mr. Owens tried to explain that there must be some misunderstanding, and that he had just clocked out from his job as a stock clerk at Macy's. Mr. Owens also showed Francavilla and the other officers his time card receipt, told them the floor he worked on, and the name and phone number of his supervisor. Yet Defendant Francavilla and his colleagues ignored him.

29. Shortly thereafter, a woman was brought forth by officers, crying hysterically, and having to be physically held up in order to maintain her balance.

5

30. As Mr. Owens stood surrounded by officers against the wall, the woman franticly alleged that Mr. Owens was the person who "did it."

31. Some police documents allege that Mr. Owens stole the Complainant's backpack on a subway at car at 50th Street and 8th Avenue, on a northbound "A" train, during a journey which began for the Complainant at 42nd Street and 8th Avenue.

32. Other police documents indicate that the crime occurred on a northbound "B," "C," or "E," train, at 53rd Street and 7th Avenue, making it impossible for the Complainant's journey to have stated at 42nd Street and 8th Avenue.

33. The woman claimed she had been riding *some* train at about 2:28 AM, and resting with her feet on her backpack, when she "felt" someone take it, then "later" saw Mr. Owens get off the train and run up a flight of stairs.

34. The woman's description of the culprit was limited at best—i.e., a young African American male with a dark hoodie.

35. Although at the time of the incident, David Owens matched the vague description of a young African American male in a hoodie, he was not in possession of a backpack and did everything in his power to communicate and otherwise prove that he had just gotten off work from Macy's and couldn't possibly have committed the alleged crime. But Defendant Francavilla and his colleagues remained utterly indifferent, ignoring Mr. Owens and continuing with their arrest and prosecution.

36. No reasonable officer would have credited the word of such an erratic and totally unreliable Complainant, no reasonable officer would have ignored evidence of Mr. Owens's alibi, no reasonable officer would have deduced that Owens could have made it from either the uptown "A" train, or the Uptown "B/C/E" line, and completed the alleged crime when he was

6

found on an uptown "1," train 10 minutes after the alleged crime, and no reasonable officer would have arrested Mr. Owens amidst such illogical and conflicting allegations.

37. Mr. Owens was charged with Grand Larceny in the Fourth Degree (a felony), and a $3500 bail was set.

38. No grand jury was ever assembled to hear the Complainant or arresting officers testify, and the case against Mr. Owens was dismissed six weeks after the arrest when prosecutors conceded they could not prove the case.

39. The State's (relatively) swift dismissal amplifies that the Complainant was totally unreliable, that no reasonable officer would have credited the word of the Complainant, and that the officers' arrest of Mr. Owens was totally unsupported by probable cause.

## AS AND FOR THE FIRST CAUSE OF ACTION ON BEHALF OF THE PLAINTIFF AGAINST ALL DEFENDANTS

### Violation of Constitutional Rights Under Color of State Law -False Arrest/Imprisonment-

40. Plaintiff incorporates by reference and realleges each and every allegation stated in Paragraphs 1 through 39.

41. The Fourth Amendment of the United States Constitution protects citizens from unreasonable searches and seizures by government officials, and prohibit law enforcement officers from arresting and detaining individuals in the absence of appropriate authorization. It also precludes police officers from conducting arrests in the absence of probable cause to believe that a crime has been committed.

42. The actions of the Defendants as stated herein violated the rights of David Owens under Federal law.

43. It is clear the Defendants lacked any objectively reasonable basis to support a legitimate probable cause arrest, as no reasonable officer would have credited the word of the Complainant under the circumstances described herein.

44. Defendants' actions were motivated by bad faith, malice, and/or deliberate indifference to the rights of David Owens.

45. This conduct on the part of Defendants also represents a violation of 42 U.S.C. § 1983, given that said actions were undertaken under color of state law.

46. As a direct and proximate result of the unconscionable acts described above, Plaintiff David Owens has been substantially injured.

## AS AND FOR THE SECOND CAUSE OF ACTION ON BEHALF OF THE PLAINTIFF AGAINST ALL DEFENDANTS

### Violation of Constitutional Rights Under Color of State Law -Malicious Prosecution-

47. Plaintiffs incorporate by reference and reallege each and every allegation stated in Paragraphs 1 through 46.

48. The Fourth Amendment of the United States Constitution protects citizens from malicious prosecution by government officials without probable cause.

49. David Owens was prosecuted, without probable cause, relative to the patently and demonstrably false allegations of a totally unreliable Complainant which led to his October 23, 2012 arrest.

50. The false and malicious charges resulted in a loss of liberty for David Owens, as he was incarcerated for approximately 6 weeks, lost his job, and was forced to fight said charges incurring substantial financial and emotional costs as a direct result.

51. The case against Mr. Owens was unambiguously terminated in his favor.

52. Defendants' actions were motivated by bad faith, malice, and/or deliberate indifference to the rights of Mr. Owens.

53. This conduct on the part of Defendants also represents a violation of 42 U.S.C. § 1983, given that said actions were undertaken under color of state law.

54. As a direct and proximate result of the unconstitutional acts described above, Plaintiff David Owens has been substantially injured.

### AS AND FOR THE THIRD CAUSE OF ACTION
### ON BEHALF OF THE PLAINTIFF AGAINST ALL DEFENDANTS

**Violation of Constitutional Rights Under Color of State Law**
**-Failure to Intercede-**

55. Plaintiff incorporates by reference and realleges each and every allegation stated in Paragraphs 1 through 54.

56. The Fourth Amendment of the United States Constitution protects citizens from unreasonable searches and seizures by government officials without the appropriate authorization.

57. The actions of Defendant officers detailed above violated the Plaintiff's rights under the United States Constitution. It is widely recognized that all law enforcement officials have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence.

58. Defendants' actions were motivated by bad faith and malice, and/or deliberate indifference to the rights of the Plaintiff.

59. This conduct on the part of Defendants also represents a violation of 42 U.S.C. § 1983, given that said actions were undertaken under color of state law.

60. As a direct and proximate result of the unconstitutional acts described above, the Plaintiff has been substantially injured.

### AS AND FOR THE FOURTH CAUSE OF ACTION ON BEHALF OF PLAINTIFF AGAINST THE CITY OF NEW YORK

*- Implementation of Municipal Policies, Practices, and Customs that Directly Violate Constitutional Rights, Failure to Implement Municipal Policies to Avoid Constitutional Deprivations and Failure to Train and Supervise Employees Under Color of State Law-*

61. Plaintiff incorporates by reference and realleges each and every allegation stated in Paragraphs 1 through 60.

62. Upon information and belief, Defendant Lieutenants Hamilton and Valenzano, and John Doe supervisors and policy makers reviewed, supervised, and otherwise sanctioned the wrongful conduct of Defendant Francavilla and his co-defendants.

63. Upon information and belief, Defendant supervisors and policy makers were final decision makers, and as a matter of policy, practice, and custom, have acted with a callous, reckless and deliberate indifference to the Plaintiff's constitutional rights and laws of the United States, in that they failed to adequately discipline, train, supervise or otherwise direct police officers concerning the rights of citizens, including not making false arrests, ignoring material evidence, recognizing unreliable identifications, inquiring further when a reasonable officer would do so, not initiating prosecution against innocent individuals, and not forwarding false and/or patently unreliable evidence to prosecutors in order to secure a conviction.

64. In the alternative, and upon information and belief, Defendants instituted policies addressing the topics listed above, but through deliberate indifference to the same culture of gross negligence, carelessness, and malice, and/or improperly pressuring officers to meet certain arrest quotas regardless of whether probable cause was present, demonstrated a willful

10

indifference to the constitutional rights of the Plaintiff. The policies, procedures, customs and practices of the Defendants violated the Constitutional rights of the Plaintiff under the Fourth Amendment of the United States Constitution.

65. It is widely recognized that all law enforcement officials have an affirmative duty to intervene to protect the clearly established constitutional rights of citizens from infringement by other law enforcement officers in their presence.

66. At all times relevant herein, the right to be free from deprivations of liberty interests caused by unjustifiable criminal charges and procedures were clearly established constitutional rights that a reasonable person would have known.

67. Upon information and belief, over a span of years, Defendant Francavilla has been named in additional civil rights cases[1] amid similar and disturbing allegations, yet never been subject to discipline or retraining as a result.

68. Defendant(s) also, upon information and belief, demonstrated deliberate indifference to the rights of those arrested in the City of New York by failing to adequately hire, screen, train, and supervise officers in New York County and Transit Division District 1.

69. A widely heralded set of best practices aimed at instructing law enforcement how to minimize the risk of wrongful identification and wrongful conviction was released through the U.S. Attorney General's Office under Janet Reno during Bill Clinton's presidency (Eyewitness Evidence, a Guide for Law Enforcement, 1999), with additional clarifications and additions offered over the ensuing years (e.g., National Research Council of the National Academies, 2014).

70. Among other things, the report recommends "that all law enforcement agencies provide their officers and agents with training on vision and memory and the variables that affect them,

---

[1] See Walker v. City of New York, et al., 11-cv-03419; King v. City of New York, et al., 14-cv-2400.

11

on practices for minimizing contamination, and on effective eyewitness identification protocols." Id. at p. 72. "In addition to instruction at the police academy, officers should receive periodic refresher training, and officers assigned to investigative units should receive in-depth instruction." Id.

71. The report also explains that a "show-up," (which is what occurred in the present case when officers brought the Complainant forth to view Mr. Owens immediately upon his arrest), can be "highly suggestive" and precautions should be taken to avoid showing a suspect in a suggestive manner such as sitting in the back of a police car, or while handcuffed. Id. at p. 19. In the present case, Mr. Owens was being detained against a wall by several officers when the Complainant made her identification.

72. The guidelines also caution against the danger of "own-race bias" a "phenomenon in which faces of people of races different from that of the eyewitness are harder to discriminate (and thus harder to identify accurately) than are faces of people of the same race as the eyewitness." Id. at 66. Upon information and belief, the Complainant in the present case was Caucasian.

73. The report also emphasizes that "exposure duration" (e.g., time spent observing a perpetrator's face during a crime) can affect the accuracy of an identification, as "relatively long exposure durations produce greater accuracy...". Id. at 67.

74. Defendants' own paperwork establishes that the Complainant's exposure to the perpetrator was fleeting at best; and her erratic, unsteady, and possibly intoxicated behavior only amplified the total unreliability of her identification.

75. At minimum, it is apparent in the present case that the Defendant officers, especially the ranking officer/policy makers whose identities are as yet unknown, have been woefully deficient

12

in their training of officers regarding eyewitness identifications, and in circulating or otherwise incorporating the DOJ recommendations into the regular training procedures of the New York City Police Department.

76. The policies, procedures, customs and practices of the above-referenced Defendants violated the Constitutional rights of the Plaintiff under the Fourth, and Fourteenth Amendments of the United States Constitution.

77. This conduct on the part of Defendants also represents a violation of 42 U.S.C § 1983, given that said actions were undertaken under color of state law.

78. Upon information and belief, none of the Defendants named herein were disciplined in for their actions relative to the Plaintiff.

79. As a direct and proximate result of the unconstitutional acts described above, Plaintiff David Owens has been substantially injured.

## DEMAND FOR PUNITIVE DAMAGES

80. The actions of Defendants described herein were extreme and outrageous, and shock the conscious of a reasonable person. Consequently, an award of punitive damages is appropriate to punish the Defendants for their cruel and uncivilized conduct. The Plaintiffs do not seek punitive damages against the City of New York.

## DEMAND FOR TRIAL BY JURY

81. The Plaintiff hereby demands a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiff David Owens requests that this Honorable Court grant him the following relief:

A. A judgment in favor of Plaintiff against all named Defendants for compensatory damages in an amount to be determined by a properly charged jury.

B. A judgment in favor of Plaintiff against all Defendants but the City of New York for punitive damages in an amount to be determined by a properly charged jury;

C. A monetary award for attorneys fees and costs of this action, pursuant to 42 U.S.C. § 1988;

D. Any other relief this Court finds to be just, proper, and equitable.

Dated: New York, New York
February 5, 2016

Respectfully Submitted By:

Andrew L. Hoffman, Esq. (AH2961)
Law Office of Andrew L. Hoffman, P.C.
*Attorneys for the Plaintiff*
261 Madison Avenue, 12 Floor
New York, NY 10016
T: (212) 736-3935
E: ahoffman@andrewhoffmanlaw.com